Good morning, Assistant State's Attorney Robin Murphy on behalf of the people of Illinois. Did you say Robin? Robin. Good morning, your honors. My name is Kerry Getsch. I represent the appellate Sheldon Baines. I might just as easily be before you representing Adrian Henley in this case, the man that the victim originally ID'd as the shooter. That victim, named Anthony Niveau, told the police that he had a gunshot wound to his right shoulder. He was 100% certain that Henley was the man he fought with face-to-face and that later shot at him during an armed robbery. About three months later, that victim, Anthony Niveau, identified my client as the same man. Mr. Baines' trial attorney never adduced this fact at trial, even though it's apparent from the police reports. But Niveau unquestionably identified both Henley and my client Baines as the exact same person. Counsel, is it true that he never adduced that fact at trial? Isn't that a bit of an overstatement? I don't think it is because he never adduced from the victim that what's contained in the police reports is that he was 100% certain this was the person he wrestled with face-to-face and that this is the person that shot at him. If you look at his trial testimony, there's three suspects. One he knows is Little Mike. The other two he has no idea who they are. But the second suspect, for purposes of the police report, is suspect number two, was the only other suspect that wrestled with Niveau and he was the suspect that shot Niveau. The third suspect was basically a lookout, had very little involvement in this whatsoever. So that fact didn't come out at trial. It didn't come out in the way you just described it? Which is the material nature of, I mean, the way it's described. Let me rephrase my question. Is the issue that you're taking the manner in which it was brought out? That specific fact, I don't believe was brought out at all. The manner in which it was brought out, I do take issue with the manner of the type of impeachment that was brought out, but it's not just the manner in which it was brought out. It's that specific, where Henley and Baines have to be the same person under DeVoe's description or ID of Henley. That doesn't come across clearly to the jury in this case. And that's one of the reasons why counsel was ineffective. It wasn't just the manner. Mr. Getz, the fact that he misidentified one of the alleged perpetrators of this crime, does that render every other identification that he makes either invalid, void, or incredible? No, but if you look at the specifics of his identification, he maintains that his original identification was correct, even though he originally identified them as the same person. Even at trial, he maintains that Henley was involved, but Henley is on videotape working at the time of the crime. I mean, he is absolutely absolved of any involvement in this crime. So even as the state seems to posit in their brief, and DeVoe seems to suggest during his testimony, there was this third person, and Henley might have been that person. He couldn't have been that person any more than he could have been the second suspect. But the heart of your issue is that his identification testimony was wrong at best, or at worst, and weak at best. That's basically what you're saying, isn't it? Well, extremely weak, I would argue. There isn't a single thing until the lineup. We're in jury and prior fact territory here. All of this somehow was put before the prior effect, which was the jury in this case. Didn't they hear this testimony, albeit it may not have been brought out in the way that you would have liked, and they found that the victim was credible in his identification of Mr. Baines? I mean, it's not just in a manner that I would have liked. The trial judge was confused. The trial judge says on the record, what are you trying to get at here? What are you trying to deduce from this victim? And it's obvious from the record that the trial attorney was unaware of the fact that he identified Henley as the same person, that that ID wasn't either a lineup or a photo array. He has to have the state's attorney tell him during a recess in judges' chambers what the impeachment fact is. So in that manner, it's not just weak. I mean, it rises to the level of ineffectiveness. Another point that I wanted to make along those lines was that the trial attorney's manner in getting this out was, I guess, bumbling, is the only word that I can really, really describe it. If you read his cross-examination of DeVoe, DeVoe understands what he's trying to do. He's trying to get at, after the judge explains to the defense attorney what the fact should be, he gets this fact out, that he identified Henley. But he doesn't, again, he doesn't tie it to where he says he's 100% certain that Henley was the shooter. And he lets DeVoe implicate Henley still and doesn't hammer home the fact that Henley could not have been involved no matter what. He could have been this passive third person. The prejudice of this error, I believe, is compounded by counsel's failure to object to the Bruton violation that we raise in our brief. Whereas the state's attorney is asking the investigating detective, he's going through the steps of the investigation, but in such a manner as the only possible implication of the detective's testimony is that little Mike said Sheldon Baines was involved. Of course, it's not specific. Those words are not elicited. We're here to say that. No, but it's a distinction without a difference. Isn't it a distinction with a difference in the sense that this very same fact pattern has been played out in other cases, and the Illinois Supreme Court and other courts have found that this is not a Bruton problem. They've gone both ways. I mean, it all depends on the very specific nature of the questions that are induced and the way it comes out. And if the only inference you can draw is that the substance of little Mike's conversation with the detective was that Sheldon Baines was involved, then that's a Bruton violation. So which case is closest to your opinion? I think that sample.  If you look at people v. sample, it's a very similar type of question. And in that case, there happens to be two co-defendants. But this court said in deciding that it was a confrontation violation, a violation of the confrontation clause, said the only – it's a very, very strong inference that the only thing that you can get out of this type of testimony was that the co-defendants implicated the defendant. And if you look at the way that the Supreme Court, the U.S. Supreme Court, is going in these sort of confrontation clause directions, they're going more towards preserving the right to confront the witness against you. But, Mr. Getsch, evidence of – eliciting evidence from a police officer as to the investigation, this is what's done in every criminal case. How is this particular case different from the scores of other cases in which the police officers put on the witness stand and testimony regarding the police investigation is elicited? The Illinois Supreme Court has said that that's okay. This is Justice Tice just putting it out. Tell me why this is different and specifically what case you rely upon and why. I know you said people versus sample, but tell me why you think people versus sample helps you in this case. It's all about the context of the questioning and answer. And, I mean, that's what the courts have always said. It's a very fine line. And it's something that can be abused. And smart states are different. I mean, I don't – we know sample well enough, maybe. I don't see the question and answer set out in your brief. What is it? How is the question asked and answered in sample? How is that compared to what happened here? It's a very similar way. In there, there was two co-defendants, and the investigation was, did you question one of these co-defendants? After that, who were you looking for? You were looking for two people. I forget the first one's name. The second one went by Lil Riv was his nickname. So they go out and they get the second co-defendant. And they're like, after you questioned the second co-defendant, who were you looking for? Did you have a suspect in mind? Yes. What was his name? Name was the defendant. Did he also go by a nickname? Yes. Lil Riv. So it's a very similar manner of questioning. And what the court says, in that case, they found that it was harmless error. But what the court says is, it's a very, and this is why I agree completely, the Illinois Supreme Court has said that they're allowed to get out this kind of questioning. But it's the manner in which they do it that can implicate a complication. Well, the Illinois Supreme Court is concerned about the substance of the conversation being revealed. And you say on page 21 of your brief, and because Scalise's testimony reveals the substance of his conversation with Lil Mike, the exception allowing for police officers' testimony about procedures undertaken during their investigation does not apply. What was the substance of the conversation that was revealed in the questioning? If you read the questions and answers, sir, during the course of your investigation, did you have occasion to speak to Lil Mike? Yes, I did. After speaking with Michael Wilson, were you looking for anyone? Yes. After speaking to Michael Wilson, were you looking for anyone? Yes. Who were you looking for? A Sheldon Baines. That, what other substance to that Lil Mike statement to the detective could there be? It wasn't that, yes, we went to this address looking for someone. It wasn't that we first. Isn't that counter? Isn't that the same thing that happens in these other cases? Well, like I said, it is a very fine line between what the police are describing and the investigative steps. If you look at the case cited by the state, Miller, the question and answers there are, did you interview this suspect? Yes. What did you do then? Well, then we went to this address. What did you do at that address? And so, yes, there's an inference that the person at the address may have been involved, but it wasn't that the co-defendant said specifically, look for this guy. And, again, the confrontation clause is implicated in this situation. That's the concern. So if the prosecutor had stopped his questioning where after he, after Detective Scanlon spoke with Michael Wilson, and then after that, what did you do? And he said, and then I went to such and such an address and I, you know, arrested the defendant. That would have been okay for you. I think so. Or if he had asked him, did you interview witnesses involved in this case? Yes. After that, who were you looking for? I was looking for Sheldon Bates. It's something, it's all about the nature of the questions and answers. And I know that it's a fine line. I recognize that. But there are cases that divide, that try and define where that line is. And I think this crossed the line. Now, this is a case where there was no objection, correct? There was no objection at trial, correct? At trial. It was kind of as interesting. I mean, this is. . . It also, in that case, too. . . There was no objection. So for us to review this error, first we, I mean, we'd have to go through a plain error analysis, correct? Or you could find ineffective assistance, which is. . . Let's start with plain error. Yes. Because you do appraise it as plain error. Yes. Okay. And so you're first asking us to look at it to determine whether it's error. And then what kind of error do you think this would be? Is this an error that we should be looking at the evidence and balancing it against the evidence? Or are you saying this is a serious error, a second-pronged error? You can do both. I think I cite samples for the proposition that this, because it implicates your right to confrontation of a codefendant, is a serious error. But also that the evidence in this case is obviously. . . I mean, that's our first argument, is that there's reasonable doubt that no rational trial effect could have found Sheldon Baines guilty beyond a reasonable doubt. So under both prongs of plain error, I think this is an error that requires reversal. And like I said, it also implicates the ineffective assistance argument. You take the Bruton violation and compound it with the manner in which he cross-examined DeVoe, the failure to bring out the impeaching evidence, and the way the direct testimony of Sheldon Baines went demonstrates that counsel was unprepared for trial. Either he was unaware of the facts that needed to come out or just unable to deduce those facts. Try to wrap up your remarks. You're a little bit over your time. So as I was saying, even if this Court doesn't reverse outright on the reasonable doubt argument, I believe that the trial errors, the ineffective assistance and Bruton violations, require remaining for a new trial. Thank you. Thank you. Once again, Robyn Murphy on behalf of the people of Illinois. In the light most favorable to the people, the evidence at trial established that defendant was one of the assailants who ambushed, robbed, and shot at Anthony DeVoe on December 30th, 2004. The evidence at trial showed as soon as DeVoe entered Apartment 107, defendant approached from the ---- What was that evidence other than the victim's testimony? Isn't it true, counsel, that the only evidence in this case that implicated Mr. Baines was the victim's testimony? And the victim's identification. Well, he gave the identification. His testimony. His testimony. That was ---- Other than that, what else implicated Mr. Baines? Other than that, this was a credibility determination. So defendant insisted ---- So it was very close. It's not as though the State had scads and scads of evidence against this man. I mean ---- He had the victim's testimony. That's correct. It's not the strongest case in the world, but the evidence ---- Justice Scalia, I'm just asking about that last part about the determination. Was the determination overwhelming? It doesn't have to be overwhelming. The jury saw it. Congratulations. I have never heard ---- I want to go back to the insistent statement. I have never heard an insistent statement actually concede that maybe this is a close case. Congratulations. We are not saying this facetiously, because I think it's very important to concede when the concession is staring you in the face. Go ahead. Well, I mean, we have the victim's testimony, and the jury heard the victim, and they heard the defendant, and to the extent their stories were conflicting, they believed in the victim. Well, let me take you in a different direction. Your opponent says that eyewitness testimony is notoriously unreliable, and in light of the fact that this particular victim had on a prior occasion and continued, as your opponent points out, up through trial, insisting that Mr. Hendley was one of the perpetrators of this crime when the police clearly said that Hendley could not have been involved in this crime. Does that cast any doubt on the eyewitness testimony, knowing that I think there are lots of studies that show that eyewitness testimony is notoriously unreliable, given that, plus the other things in this case, does that make this testimony even more unreliable? I don't think so, because we have to remember that there were three offenders here. I know, but just stay with the one, because the only person that identified Mr. Bates was Mr. DeVoe. That's correct. And that's the only person that was close to him, that claimed that he was face-to-face with him. So I'm talking about just that eyewitness testimony. That's the only evidence you have in this case that ties Bates to the case, isn't it? Well, you also have the fact that when defendant got on the stand, he admitted that he knew the co-defendant very well. I know a lot of people. It doesn't mean that you committed a crime with them. Right. No, it doesn't. But it's another factor that the jury saw that connected defendant with the co-defendant and with the crime. But didn't he also testify that he knew him, he knew little Mike, but they weren't friends? Little Mike was related to somebody in the defendant's life, but they were not social friends. Wasn't that his testimony as well? It was his testimony on cross-examination that he knows little Mike very well. He testified that when detectives ---- That's true, but I'm asking about the rest of the testimony, not just the part that you are talking about. Right. Okay. Didn't he also say that he did not socialize with little Mike or something to that effect? Yeah. That may be correct, but he did testify that he knows little Mike very well. After he told the detective first that he didn't know little Mike, and then the next day when he was arrested, he was showed a picture. He's like, oh, that's little Mike. So you have that and you have his other credibility flaws, the fact that he changed his alibi story, which he admitted to on cross-examination five times. This pretty much came down to a credibility determination. But the state had the burden. Right. Of course we have the burden. No, no, of course. We have the burden. It's the credibility determination here that went on. Right. Ultimately, it's the state's burden. It is the state's burden. Let's go back to the credibility issues that were raised, certainly, by your main witness as to his identification. As to which identification? As to the identification that he's made of someone else. Okay. All of that. Okay. Well, there was the identification of this person, Henley, at Home Depot. But contrary to what defense counsel states on appeal, it wasn't really clear what role these men had. No, we're talking about the victim's testimony, Mr. Murphy. Yeah. The victim said that he, the detective testified, and there was no dispute in this, that the victim said that he was 100% certain that Henley was the one with whom he had been face-to-face in combat with, so he would, quote, never forget his face. Wasn't that his testimony? Okay. Yes. I'm going to finish my question. So take him that. And then he now sees Baines in court, and he says, now I'm 100% certain that that was the man. Isn't there some question as to you can be 100% certain of one person that turns out couldn't possibly have been there? So now you're 100% certain of somebody else. Okay. But you haven't quite let go of the other person. Because even at trial, he wasn't so sure that Henley wasn't still involved, although the police have cleared Henley and said he could not possibly have been involved. That's correct. Okay. Does that shake the identification any? Does that, you know, put some cracks in the underpinning of that foundation? I mean, certainly it's not helpful to our case. And it was one of defense counsel's strongest arguments, which he was able to argue successfully to the jury. But I think what's important is that any confusion as to whether Henley was there, as to whether he was the second offender or maybe he was the third offender, it didn't weaken his positive identification of defendant in the lineup and, again, at trial. You have three characters here. In one of the lineups, in the photo array, he first failed to identify Baines, didn't he? Indeed. He fails, and he testifies that he failed. And that was shortly after the crime. The first time he identified him was almost five months, either five months or five and a half months after the occurrence. And as they point out, your memory gets weaker and not stronger as time goes by. According to my records, Justice Cunningham, on May 26th, which was five months after, that's when the photo ID occurs, or the display. And he's unable to identify. He testifies that the photo identification, but the next month is when he does the physical lineup. So there was not so much time difference there. Well, similar to this, there's something in your brief. On page 39, you point out, defense counsel's decision not to impeach DeVos was a matter of trial strategy. Do you really believe that? I believe it was a trial strategy, yes, Justice Cunningham. According to Mr. Getsch, this was the central piece of evidence in the State's case. Without this, the State didn't have anything. The case goes away without this. So what possible strategy could lead defense counsel to decide not to attack it? That's all the State has. So what was the trial strategy? Okay. There was a trial strategy. First of all, there was a conference, there was a sidebar with the judge, and trial counsel and the judge are talking about how he wants to possibly impeach him. And the judge says, well, if he fronts this, then there's no need for you to impeach him. And trial counsel says, correct. Okay, that's what we'll do. Then on cross-examination, he asks him, he says. Does he front it? Does he take it? Yes. Does it all come out? Not all, but I'll get to that in a minute. It came out that he identified a person at Home Depot who he insisted was at the scene of the crime. So that already came out at cross. So you could almost say that if he was to further impeach him, that he couldn't impeach him because he was fronting it. Secondly, as to whether he could have impeached him on, you know, whether they were grappling face-to-face, all of this evidence came out through Detective Kelly. When Detective Kelly took the stand, trial counsel, in defense's case, called Detective Kelly, who testified to everything that they could have impeached him with. All the bad stuff we talked about, the 100% sure that Henley was involved. I'm sorry. I don't want you to use up all your time on something that we've already read. And since I asked your colleague, your opponent, I'm going to ask you the same question. He took issue with the way he was asking the question. So I would ask you, wouldn't it have been important to bring out clearly for the jury that Mr. DeVoe had identified another man at another time as being 100% certain that that other man was the perpetrator of this crime? Would that have been important to bring it out clearly so that it wasn't brought out in what your opponent described as a bumbling fashion? Right. It's all in there, but it's mixed up like a stew, so you have to really figure out which is which. Okay. Well, first of all, that's not the standard for ineffective assistance. But you have to answer my question. Okay. I'm attempting to. How about if you just – how about answering the question? Okay. Can you repeat it one more time just so I'm – Would it have been important, seeing that this was the underpinning of their case for defense counsel to have clearly brought out that the witness had at another time identified and was continuing to identify another man who couldn't possibly have been involved in the crime as being 100% certain of having been the perpetrator? Would it have been important for him to do that in a clear fashion so that the jury understood, so that the jury was clear on that? Would that have been important? It was important, and that's why it did come out from Detective Kelly, who testified that DeVos stated he was 100% sure. So that came out to the jury. There was no bumbling. There was no confusion. All of that came out to the jury. And to the extent that – But it didn't come out through – Through DeVos. So – No. Mr. Goetz calls that a bumbling fashion. Right. I don't think that's bumbling. I don't think that's bumbling. I say – I would say that, I mean, this was a trial strategy. What about a poor choice? Well, if I could say one more thing. When Defense Counsel was attempting to distinguish whether this was the second person or the third person, he was talking about the same person as Henley, DeVos on the stand says, don't get it confused that I made – there was this guy at Home Depot. Defendant was there. I saw him. So to the extent that counsel maybe didn't want to bring out that insisting, emphatic declaration by the witness, maybe it's just better to have Detective come up and tell the jury in a clear fashion. It would be better for the defense to not really impeach the complaining witness, the only eyewitness to this incident, the only real evidence in this case. Don't bring it out through him. Let's put this detective on the stand. Well, first of all, DeVos admits – Yes or no.  I mean, maybe given that we have the luxury of hindsight, it would have been – maybe it would have been better. Even though he didn't want to maybe get up all this insisting. Maybe let the – Right, but that's not the standard. It doesn't have to be great. It doesn't have to be perfect. Illinois courts have ruled that strategic mistakes can't amount to ineffective assistance of counsel. So while it may not have been the perfect one, as we look at the record now, it was a trial strategy. Was this all argued to the jury? Do you remember in the argument, did the defense counsel argue this? This did come up. No, that wasn't Justice Kleist's question. Oh, I'm sorry. It was accurate. I'm sorry. Did defense counsel argue, you've heard Detective Kelly, you've heard what he said. Right. This is what happened before Avril made another identification, all of that. Was that argued? I cannot say with certainty that I believe it was. I don't want to say that I'm sure it was. But it was a lengthy closing argument. Counsel, bear in mind, as I said at the beginning, we've read the record. Okay. Everything that was said that was taken down, we've read the record. Okay. So when Justice Kleist asked you a question, it wasn't a trick question. Okay. No. I just – I don't have the facts on the record for saying something that wasn't true. If you don't know, you can say you don't know. Okay. I don't know. Well, what's your answer? I don't know. He doesn't know. Okay. You're not sure, right? I don't have the facts of the closing argument in front of me. If I can – Do you think it would have been important for that to have been argued? Since you are defending the effective assistance of counsel, which the trial defense counsel provided, do you think it would have been important for that to have been argued in summation? I think it may have been helpful. But the jury heard everything that they could have impeached to vote on. I'm sorry. Maybe part of your argument should be the prejudice front is stricken. Right. Right. Right. Is that kind of where you're going now? That the jury heard everything? Right. Even if counsel didn't do a very good job, the jury still heard everything? That's correct. It doesn't have to be perfect. You just have to show that the defendant was denied a fair trial. And in the post-trial motion, the trial judge, this was ably and thoroughly litigated at the post-trial phase by new counsel. And the trial counsel who saw the proceedings ruled that even though this may not have been the best defense counsel, defendant was not denied a fair trial. Anything else? If I could just address briefly the hearsay issue. Briefly. Again, this was not a statement by Wilson. During the course of your investigation, did you speak to Michael Wilson? Yes. After speaking to Michael Wilson, were you looking for anyone? Yes. Who were you looking for? A Sheldon Baines. There is simply ñ But, counsel, isn't that what they used to call in law school the one question too many? I mean, he could have stopped it, you know, before you're looking for anybody else. And as your opponent pointed out, he wouldn't have had an issue with that. I asked him that question specifically. Well, what was important here is for the police to show that they performed all their investigations properly and they found and they were led to defendant in the proper manner. So to the extent that his name ñ Well, it wasn't ñ Wouldn't you say ñ I mean, counsel, the questions are right here. Well, we don't ñ the jury wasn't told that the co-defendant, Wilson, confessed. And the jury wasn't told that the co-defendant inculpated specifically Mr. Baines. And that's what's required for a Bruton violation. And there's simply neither one of those here. And, Justice Cunningham, to the extent that this may have been an inference, the Illinois Supreme Court ñ Well, he said his name, counsel. It wasn't an inference. He asked him, who were you looking for after that? He said Sheldon Baines. Right. Not even a close call. Right. Not even a close call. Standard prosecutor 101. Right. Well ñ Right? Any single finger. He didn't say he did it. And he didn't say I, being little Mike, did it. And that's what Illinois courts look at. And an inference is never enough. You need a statement. Counsel, he said his name. It wasn't an inference. He basically asked him, who were you looking for after you spoke with little Mike? He said Sheldon Baines. Right. There was no objection. And he went on to describe what he did after that. That's what happened. Maybe the jury could have understood that Sheldon Baines had information. I don't know. And that's okay. You think that that's what the Illinois law says is okay in terms of bringing out the police investigation. The Illinois Supreme Court, Henderson, ruled in the exact same pattern that we have here, who were you looking for. I was looking for a defendant. They said his name. And they ruled that it wasn't a Bruton violation or a hearsay violation. So to the extent that maybe we might not agree with it, that's what the Illinois Supreme Court says. And they follow. My defense counsel cites the case sample. And excuse me one second. According to, and I don't have the facts of the case available to me now, but the court said in sample, the testimony should be limited to the fact that there was a conversation without disclosing its content and to what the police did after the conversation concluded. And this is exactly what happened here. There was a fact of the conversation, no content, and what the police did next. Okay. I'm sorry. So for these reasons and the reasons contained in the people's brief, we ask that you affirm the decision of the trial court and affirm defendant's conviction. Thank you. Thank you. I just have two brief points in rebuttal. I think from reading the record, it's obvious that it wasn't trial strategy not to impeach DeVoe. He was attempting some form of impeachment, but he was unaware of the nature of the impeachment that he should have brought up. Tell me about the testimony about the detective. So what was that? What was the purpose of that? How was that in this? What was that all about? That was for purposes of presenting Henley's identification. But, again, he doesn't ever bring out. But, again, is it substantive evidence? Was that impeachment? I mean, isn't there some? I think it's the same. This is a specific question. What did not come out through Kelly that you believe should have been asked of DeVoe? That Henley and Baines are identified as the same suspect. As the state argues and as DeVoe tried to infer on the stand, they left open the defense counsel's questioning, left open the possibility that Henley was this third suspect. When it's clear from reading the police reports that Henley was identified as suspect number two, just as Baines was later. So that's what doesn't come out. And that's direct impeachment. I mean, that can't be trial strategy. To say you identified him as the shooter, police said no, no, no, and so three months later you identified Baines as the shooter. I mean, that is as direct impeachment as there gets. Did defense counsel argue this in closing her? He argued that the identification was unreliable, but not that Baines and Henley are the exact same suspect in DeVoe's mind, which is the point, I think, that's the point of the trial. I mean, that is direct impeachment, as I said. The second point I wanted to address is that there's some sort of inference that can be had from Sheldon Baines not knowing what he was doing six months prior to being arrested. I don't know about you. I can remember what happened exactly six months ago because my wife happened to be in labor. But unless it's a life-shattering event like that, you're not going to know what was happening at 10 p.m. six months prior, and that there's any sort of inference that can be drawn from Baines' failure to give us a rock-solid alibi. I mean, Henley might have just as easily said, I was at work, and if they didn't have documented proof, he could have been just, you know, well, maybe I was doing this, maybe. I mean, you're trying to find a reason not to get in trouble with the police. To not have a rock-solid alibi, I don't think you could draw any inference from that. So with that, unless there's any other questions, again, we ask that you reverse and either reverse out or remain in the room. Thank you both. Thank you very much.